**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GOTHAM CITY ORTHOPEDICS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> OXFORD, OXFORD HEALTH PLANS, INC., OXFORD HEALTH PLANS, LLC, OXFORD HEALTH PLANS (NJ), INC., OXFORD HEALTH INSURANCE, NON-NEW JERSEY OXFORD PLANS 1-10 and JOHN DOES 1-10, <br><br> Defendants. | CIVIL ACTION NO.: <br><br><br> COMPLAINT AND JURY DEMAND |

Plaintiff, Gotham City Orthopedics ("Plaintiff"), by way of this Complaint against Defendants, Oxford, Oxford Health Plans, Inc., Oxford Health Plans, LLC, Oxford Health Plans (NJ), Inc., Oxford Health Insurance, Non-New Jersey Oxford Plans 1-10 (collectively "Oxford" or the "Oxford Defendants"), and John Does 1-10, alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action to stop and redress Oxford's systematic failure to process and make payment upon legitimate and proper claims for services rendered to participants in health plans insured and/or administered by Oxford (the "Oxford Plans"), who either assigned to Plaintiff their legal rights and benefits under their respective plans or executed a Power of Attorney authorizing Plaintiff to pursue on a participant's behalf collection of claim payments. (the "Oxford Insureds"). Correspondence, account activity reports and claims documentation over the course of years demonstrates Oxford's imposition of an improper claims "procedure" that wrongfully denied and/or underpaid reimbursement of "out-of-network" benefits on claims assigned to Plaintiff by the Oxford Insureds and/or pursued for collection by Plaintiff on behalf of Oxford

Insureds pursuant to Powers of Attorney, covering medical services rendered from 2014 to present (the "Claims").

2.      Oxford's review and processing of Plaintiff's Claims is characterized, *inter alia*, by sweeping denials of the Claims by Oxford; automatic, indiscriminate, adverse benefit determinations lacking any and/or adequate explanation of the reason or reasons for denial of Claims other than an improper finding that the claims were not medically necessary and the procedures were repetitive; failure to provide adequate notification and disclosures; improper review and processing of appeals; and adverse benefit determinations on erroneous grounds.

3.      Oxford's failure to implement and maintain reasonable claims procedures, its failure to reimburse Plaintiff for services rendered to the Oxford Insureds, constitute violations of federal law including the Employee Retirement Income Security Act of 1974 ("ERISA"), New Jersey State law, and the contractual, fiduciary and other obligations owed by Oxford to its Insureds (as to which Plaintiff is the assignee).  For the patients listed below, Plaintiff has incurred $746,302.00 in charges for which Oxford has only paid $18,726.27 – **a payment rate of only 2.5%.**  Accordingly, Plaintiff has incurred no less than **$727,575.73** in unpaid services because of Oxford's unsubstantiated Claim denials and/or reductions.

4.      Detailed information is not set forth herein solely to protect the identity and Protected Health Information of the patients.  Plaintiff will provide a list of Claims with complete identifying information, including patient names and Oxford identification numbers to Defendant's counsel.  In addition, Plaintiff has provided the Claims detail at issue, redacted for Personal Health Information, attached as **"Exhibit A."**

5.      In short, Plaintiff seeks a judgment in its favor for the relief requested below.

BE:11668529.1/GOT052-279811

## PARTIES

6.     Plaintiff is a medical practice located at 50 Mount Prospect Avenue, Suite 104, Clifton, New Jersey 07013.

7.     Defendant Oxford is, upon information and belief, a Connecticut Corporation or Corporations, with a headquarters at 48 Monroe Turnpike, Trumbull, Connecticut, and various offices in New Jersey.  Founded in 1984, Oxford offers health plans to employer and individuals in New Jersey, New York and Connecticut.  Oxford was acquired by United Healthcare in July 2004, and currently operates as a fully-owned subsidiary under its own name

8.      "Oxford" is a brand name used for products and services provided by one or more of the Oxford group of subsidiaries or affiliates that offer, underwrite, or administer benefits. When used in this Complaint, "Oxford" includes all Oxford subsidiaries or affiliates owned and controlled by any of the named Defendants.

9.     Defendants, Non-New Jersey Oxford Plans 1-10, as yet unidentified, are health insurers or similar entities, and are fictitious defendants to be identified in the course of litigation. Upon information and belief, Oxford provided administrative services for the Oxford Plans 1-10.

10.     The individual insureds are employees or covered relatives of employees covered under their employers' health insurance plan and entitled to health benefits under plans, which are sponsored, funded and administered by Oxford.  At all relevant times, Defendants provided healthcare coverage to and/or administrative services for the health insurance plans of the individual insureds.  Defendants' health insurance plan provided health, medical and hospital coverage, including emergency room coverage, expressly and/or by operation of law.

11.     Defendants John Does 1-10, yet unidentified, are individuals and/or corporations who, upon information and belief, committed, participated in, solicited others to engage in, and/or

knowingly assisted, conspired with or urged others to commit the wrongful acts set forth herein. John Does 1-10 are fictitious defendants to be identified in the course of litigation.

## JURISDICTION

12.     Oxford's conduct in providing, underwriting and administering employer-sponsored health benefit plans, including making determinations of reimbursements to be paid to providers of health care services to Oxford plan participants pursuant to the terms of such plans, is governed by ERISA, 29 U.S.C. § 1001, *et seq.*  As a result, this Court has subject matter jurisdiction over Plaintiff's ERISA claims under 29 U.S.C. § 1132 of ERISA, and under 28 U.S.C. § 1331, which confers upon federal district courts jurisdiction over all civil actions arising under the laws of the United States.

13.     This Court has supplemental subject matter jurisdiction over Plaintiff's State law claims, including claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Promissory Estoppel, Unjust Enrichment and Quantum Meruit, under 28 U.S.C. § 1367.

## VENUE

14.     Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391 because, among other things, Oxford conducts a substantial amount of business in this district, and a substantial part of the events or omissions giving rise to the claims set forth in this Complaint arose in this district.

## FACTS COMMON TO ALL COUNTS

### A.     Background

15.     Oxford is in the business of providing, underwriting and/or administering various forms of health insurance, including individual, employer-sponsored, and governmental health insurance coverage.  Through these plans, Oxford reimburses Oxford Insureds for certain health care expenses ("Covered Services"), subject to the terms, conditions, and benefit limitations set

BE:11668529.1/GOT052-279811

forth under the plans.

16.     Oxford provides, underwrites and/or administers the health insurance benefits of numerous Oxford Insureds in the State of New Jersey.

17.     Upon information and belief, the Oxford Insureds are covered by a Plan offered, underwritten, or administered by Oxford as part of a private, employer-provided employee health and/or welfare benefit plan governed by ERISA.  ERISA governs all such private employee health and welfare benefit plans, whether they are fully-insured or self-funded.

18.     Oxford provides its Insureds with access to Covered Services by utilizing, in part, a network of health care providers who have contractually-agreed to participate in the Oxford Plans and thus render care on a fixed-fee basis. The health care providers who enter into these participation agreements or contracts with Oxford are referred to as "Participating Providers."

19.     The Oxford Plans that are the subject of this Complaint provide for so-called "out-of-network" benefits, under which the Oxford Insured is entitled to insurance benefits for services rendered by health care providers that have not entered into Participating Provider agreements with Oxford. These "Non-Participating Providers" have not agreed to accept Oxford's contractual fee schedule when providing Covered Services to Oxford Insureds.  Instead, Non-Participating Providers are entitled to be reimbursed at usual, customary and reasonable ("UCR") rates.

20.     At all relevant times, Plaintiff was a Non-Participating Provider with Oxford.

21.     As such, Plaintiff has rendered health care services to Oxford Insureds and is supposed to be paid by Oxford directly for providing such services through the issuance of benefits under the terms of Oxford Plans.  Each of these services was reported by Plaintiff to Oxford for reimbursement purposes pursuant to the American Medical Association's Current Procedural Terminology ("CPT"), which is used by licensed providers in submitting health insurance benefit

BE:11668529.1/GOT052-279811

claims to third party payers, including insurers such as Oxford.

22.     Because the benefits payments to Plaintiff were based on Oxford's evaluation and assessment of the terms and conditions of ERISA Plans, ERISA governs the adjudication and disposition of these benefits payments.  Further, because Oxford paid Plan benefits directly to Plaintiff as an assignee under the benefits assignments received from the Oxford Insured, Plaintiff is deemed to be a Plan beneficiary under ERISA, with standing to assert rights and protections under this statute.

23.     Alternatively, Plaintiff is an authorized agent of the Aetna Insureds under Powers of Attorney duly executed by the Aetna Insureds authorizing Plaintiff to, *inter alia*, file suit on behalf of the Aetna Insureds against Aetna for claims relating to reimbursement payments for medical services rendered by Plaintiff.

**B.**     **Assignment of Rights and Benefits of the Oxford Insured to Plaintiff**

24.     As a matter of course, the Oxford Insureds treated by Plaintiff signed an assignment of benefits form ("AOB").  This document includes an assignment through which the Oxford Insureds directly assigns to Plaintiff his or her rights and benefits under the Oxford Plan governing the patient's health care services rendered by Plaintiff.  Further, by executing the AOB, the Oxford Insureds authorizes the release of any necessary information to his or her insurance carrier.

25.     A sample of AOB form signed by Plaintiff's patients (including the Oxford Insureds at issue) states, in relevant part:

> I irrevocably assign to you, my medical provider, all of my rights and benefits under my insurance contract for payment for services rendered to me, including but not limited to all my rights under "ERISA" which may be applicable to the medical services at issue.  I specifically assign to you all of my rights and claims with regards to the employee health benefits at issue including all rights and claims (including claims for assessment of penalties and for attorneys' fees) arising under ERISA or other federal or state laws.
>
> ***

I authorize you to file insurance claims on my behalf for services rendered to me and this specifically includes filing arbitration/litigation in your name on my behalf against the PIP carrier/health care carrier. I irrevocably authorize you to retain an attorney of your choice on my behalf for collection of your bills. I direct that all reimbursable medical payments go directly to you, my medical provider. I authorize and consent to your acting on my behalf in this regard and in regard to my general health insurance coverage and I specifically authorize you to pursue ant administrative appeals conducted pursuant to "ERISA".

26.     Plaintiff obtained a valid assignment of rights and benefits conferred to the Oxford Insureds under the Oxford Plans for the Claims at issue in this action. Pursuant to these assignments, Plaintiff has standing to pursue claims for benefits on behalf of the Oxford Insureds under ERISA, and under the laws of the State of New Jersey.

27.     Following treatment, pursuant to the AOB, Plaintiff is entitled to payment from Oxford and directly submits to Oxford claims forms for reimbursement of services rendered to the Oxford Insureds.

28.     Oxford is obligated under the Oxford Plans to pay in accordance with the Oxford Insureds' right to receive reimbursement for out-of-network care.

29.     At all relevant times, Plaintiff regularly submitted claims for reimbursement to Oxford with respect to Covered Services it provided to the Oxford Insureds.

30.     Following Plaintiff's submission of claims for reimbursement to Oxford, Oxford corresponds, or should correspond, directly with Plaintiff regarding the status of those claims, and has remitted reimbursement for certain claims directly to Plaintiff.

31.     Throughout Oxford's entire course of conduct with respect to Claims submitted by Plaintiff as the assignee of the Oxford Insureds, Oxford has never claimed that it has the right to reject Claims because they were assigned to Plaintiff. As a result, to the extent Oxford ever could have raised a defense to the Claims asserted herein based on their assignment to Plaintiff, Oxford has waived and is estopped from raising such a defense or position, irrespective of whether any

Oxford Plan at issue contains an anti-assignment provision.

32.     Accordingly, Plaintiff has standing by assignment, and independently, based on waiver and estoppel, to sue Oxford as an ERISA beneficiary.

**C.     Oxford's Failure to Lawfully Implement and Apply Reasonable Claims Procedures, Improper Denial of Plaintiff's Valid Claims and Failure to Provide Full and Fair Review of Denied Claims in Violation of ERISA and Terms of Oxford Plans**

33.     With respect to those of its Plans sponsored by private employers, Oxford is subject to ERISA, and its governing regulations.

34.     Under ERISA, Oxford cannot systematically deny coverage for services (or types of services) unless the applicable Oxford Plan contains an express exclusion specifying that such services are not Covered Services under that Plan's terms.

35.     Under ERISA, Oxford cannot systematically underpay for services under the applicable plan and must make payments of benefits in the manner and amounts required under the terms of the applicable Oxford Plan.

36.     In offering and administering the Oxford Plans and making payment decisions, Oxford functions as a "plan administrator" pursuant to ERISA.  Oxford interprets and applies the Plan terms, makes all coverage decisions, and/or provides for payment to Insureds and/or their providers.  Oxford functions as a "plan administrator" when it insures or administers a group health plan, when it is designated as a plan administrator for such a plan, or when it determines appeals and addresses grievances within the meaning of such terms under ERISA.  As a plan administrator, Oxford also assumes various obligations specified under ERISA, including providing its Insureds and their assignees with a Uniform Medical Policy ("UMP"), a document designed to describe in layperson's language the material terms, conditions and limitations of the Plan.  The full details of the plan, which are summarized in the UMP, are contained in the Evidence of Coverage that governs each Oxford Insured's Plan.

37.     If the employer, or an entity other than Oxford, is deemed to be the plan administrator, Oxford remains responsible for ensuring that the UMP complies with the law under its duties as a co-fiduciary as provided in ERISA, 29 U.S.C. § 1105.

38.     Oxford also exercises discretionary authority and control in its administration of Oxford Plans, over claims processing and adverse benefit determinations with respect to claims of Oxford Insureds and their assignees, and in its interaction with Oxford Insureds and their assignees.  Therefore, Oxford also functions as a fiduciary as defined under ERISA.  Irrespective of its status as plan administrator, Oxford is liable for breach of its obligations as a fiduciary, as provided in ERISA 29 U.S.C. § 1109, because it exercises discretionary authority and/or control.

39.     Oxford's fiduciary functions include, *inter alia*, preparation and submission of Explanation of Benefits statements ("EOBs"); determinations regarding claims for benefits and coverage; oral and written communications with Oxford Insureds, their assignees, and medical providers regarding coverage and claims determinations; and the processing, management, review, decision making and disposition of appeals and grievances under Oxford Plans.

40.     Under ERISA, Oxford is required, among other things, to comply with the terms and conditions of its Plans; to afford its Insureds, or their providers where a valid assignment of benefits exists, an opportunity to obtain a "full and fair review" of any denied or reduced reimbursements; to establish and follow reasonable claims procedures prescribed in ERISA regulations; and to make appropriate and non-misleading disclosures to Insureds, their assignees, and providers.  Such disclosures include accurately setting forth Plan terms; explaining the specific reasons why a claim is denied and the internal rules and evidence underlying such determinations; disclosing the basis for its interpretation of Plan terms; and providing appropriate data and documentation concerning its coverage decisions.

BE:11668529.1/GOT052-279811

41.     The comprehensive ERISA regulatory scheme governs, *inter alia*, the timing and notification of benefits determinations by Oxford; the manner and content of notification of benefits determinations; and the procedure, timing and manner of notification requirements concerning appeal of adverse benefits determinations by Oxford.

42.     With respect to post-service reimbursement claims, ERISA regulations require Oxford to notify claimants of an "adverse benefit determination," no later than 30 days after receipt of a claim. Under ERISA, the term "adverse benefit determination" is defined as follows:

> a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.

29 C.F.R. § 2560.503-1(m)(4).

43.     ERISA's reasonable claims procedure regulations further require Oxford, *inter alia*, to set forth the following information in an understandable manner in all adverse benefit determinations to claimants: (a) the specific reason or reasons for the determination; (b) reference to the specific plan provisions on which the determination is based; (c) a description of any additional material or information necessary to perfect the claim and an explanation of why such information is necessary; (d) a description of the plan's review procedures and the applicable time limits, including a statement advising of the right to bring a civil action under ERISA; (e) a statement regarding any internal rule, guideline, protocol, or other similar criteria relied upon in making the determination; and (f) a statement regarding the scientific or clinical judgment underlying a determination based on a medical necessity, experimental treatment or similar exclusion or limit. 29 C.F.R. §2560.503-1(g).

44. Oxford indiscriminately denied payment and substantially underpaid for claims of the Oxford Insureds without valid excuse or justification in violation of ERISA for each of the Insureds listed below.

45. Oxford made such claims determinations without valid evidence or information to substantiate such determinations and/or in an arbitrary fashion and did not provide a "full and fair review" of the denied or reduced reimbursement.

46. Plaintiff duly submitted appeals to Oxford of the denial and underpayment of the Claims.  Oxford denied the appeals, and Oxford's treatment of Plaintiff's adverse benefits determinations were contrary to ERISA, applicable regulation and terms of applicable Oxford Plans.

47. In summary, Oxford engaged in a wrongful and systematic denial of Claims submitted by Plaintiff seeking payment for medically necessary and Covered Services rendered to the Oxford Insureds.

   1. **Defendants Have Substantially Underpaid Plaintiff for the Treatment Provided to the Oxford Insured**

48. Oxford has wrongfully and substantially underpaid for claims without excuse or justification in violation of ERISA.

*Oxford Insured #1: N.Y., Date of Service: 8/23/14*

49. On August 23, 2014, Plaintiff rendered surgical services to Oxford Insured N.Y. at Beth Israel Medical Center.

50. N.Y. was diagnosed with a right humerus fracture and Plaintiff performed an open reduction and internal fixation of the right humerus.

51. N.Y. was insured under the Oxford Plan through her employer.

52. N.Y. assigned her insurance benefits to Plaintiff, including the right to submit

insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

53.    N.Y. also appointed Plaintiff to serve as her agent, pursuant to an executed Power of Attorney, in order to, on N.Y.'s behalf, submit insurance claims for reimbursement payments, exercise appeals of claims, and file suit against her health insurance carrier for claims relating to reimbursement payments for medical services rendered to N.Y. by Plaintiff.

54.    Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $24,000.00.

55.    Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $0.00.

56.    Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

57.    Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #2: A.L., Date of Service: 10/24/14*

58.    On October 24, 2014, Plaintiff rendered surgical services to Oxford Insured A.L. at Hackensack University Medical Center.

59.    A.L. was diagnosed with right ring finger and left long finger stenosing tenosynovitis, and Plaintiff performed an open right ring finger and left long finger A1 pulley release.

60.    A.L. was insured under the Oxford Plan through his employer, Physicians for Woman's Health.

61.    A.L. assigned his insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue

BE:11668529.1/GOT052-279811

administrative and judicial appeal of claims.

62.     A.L. also appointed Plaintiff to serve as his agent, pursuant to an executed Power of Attorney, in order to, on A.L.'s behalf, submit insurance claims for reimbursement payments, exercise appeals of claims, and file suit against his health insurance carrier for claims relating to reimbursement payments for medical services rendered to A.L. by Plaintiff.

63.     Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $40,000.00.

64.     Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $0.00.

65.     Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

66.     Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #3 N.C., Date of Service: 11/25/14*

67.     On November 25, 2014, Plaintiff rendered surgical services to Oxford Insured N.C. at Palisade Medical Center.

68.     N.C. was diagnosed with a left knee medial and meniscus tears, and Plaintiff performed a left knee diagnostic arthroscopy and partial lateral meniscectomy.

69.     N.C. was insured under the Oxford Plan through his employer, Saint Peter's Prep.

70.     N.C. assigned his insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

71.     N.C. also appointed Plaintiff to serve as his agent, pursuant to an executed Power of Attorney, in order to, on N.C.'s behalf, submit insurance claims for reimbursement payments,

exercise appeals of claims, and file suit against his health insurance carrier for claims relating to reimbursement payments for medical services rendered to N.C. by Plaintiff.

72.     Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $24,000.00.

73.     Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $0.00.

74.     Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

75.     Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #4: Y.V., Date of Service: 12/5/14*

76.     On December 5, 2014, Plaintiff rendered surgical services to Oxford Insured Y.V. at Palisade Medical Center.

77.     Y.V. was diagnosed with a right bimalleolar equivalent fracture with lateral malleolus fracture and possible syndesmotic injury, and Plaintiff performed an open reduction and internal fixation of the right lateral malleolus and application of a splint.

78.     Y.V. was insured under the Oxford Plan through her employer, Santex Fashion USA.

79.     Y.V. assigned her insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

80.     Y.V. also appointed Plaintiff to serve as her agent, pursuant to an executed Power of Attorney, in order to, on Y.V.'s behalf, submit insurance claims for reimbursement payments, exercise appeals of claims, and file suit against her health insurance carrier for claims relating to

BE:11668529.1/GOT052-279811

reimbursement payments for medical services rendered to Y.V. by Plaintiff.

81.     Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $25,000.00.

82.     Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $240.00.

83.     Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

84.     Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #5: P.M., Date of Service: 1/30/15 and 2/6/15*

85.     On January 30, 2015 and February 6, 2015, Plaintiff rendered surgical services to Oxford Insured P.M. at Christ Hospital.

86.     P.M. was diagnosed with a left shoulder labral tear and greater-tuberosity fracture, and on January 30, 2015, Plaintiff performed a left shoulder diagnostic arthroscopy, partial synovectomy, open reduction and internal fixation of the left greater trochanteric fracture.  On February 6, 2015, Plaintiff performed a removal of hardware in the left shoulder and revision, open reduction and internal fixation of the left greater tuberosity fracture with plate and screws.

87.     P.M. was insured under the Oxford Plan through his employer, NY Technology Partner.

88.     P.M. assigned his insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

89.     P.M. also appointed Plaintiff to serve as his agent, pursuant to an executed Power of Attorney, in order to, on P.M.'s behalf, submit insurance claims for reimbursement payments,

BE:11668529.1/GOT052-279811

exercise appeals of claims, and file suit against his health insurance carrier for claims relating to reimbursement payments for medical services rendered to P.M. by Plaintiff.

90.     For the January 30, 2015 services, Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $64,000.00.

91.     Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $2,275.00.

92.     For the February 6, 2015 services, Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $40,000.00.

93.     Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $4,550.00.

94.     Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

95.     Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #6: J.A., Date of Service: 9/23/15*

96.     On September 23, 2015, Plaintiff rendered surgical services to Oxford Insured J.A. at Hoboken University Medical Center.

97.     J.A. was diagnosed with malunion of a left forearm both bone fracture, and Plaintiff performed an open reduction and internal fixation of the left mid-shaft radius and ulna and application of a long arm cast.

98.     J.A. was insured under the Oxford Plan.

99.     J.A. assigned his insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

100.    J.A. also appointed Plaintiff to serve as his agent, pursuant to an executed Power of

-16-

Attorney, in order to, on J.A.'s behalf, submit insurance claims for reimbursement payments, exercise appeals of claims, and file suit against his health insurance carrier for claims relating to reimbursement payments for medical services rendered to J.A. by Plaintiff.

101.    Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $30,000.00.

102.    Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $0.00.

103.    Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

104.    Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #7: J.W., Date of Service: 12/10/15*

105.    On December 10, 2015, Plaintiff rendered surgical services to Oxford Insured J.W. at Liberty Ambulatory Surgery Center.

106.    J.W. was diagnosed with stiffness in his right index finger and contracture in his right index finger proximal interphalangeal joint, and Plaintiff performed a tenolysis flexor digitorum profundus of the right index finger, tenolysis flexor digitorum superficialis to the right index finger, capsulotomy and release of contracture in the right index finger proximal interphalangeal joint and manipulation of the right index proximal and distal interphalangeal joints..

107.    J.W. was insured under the Oxford Plan through his employer, Electric Lighting Agencies.

108.    J.W. assigned his insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

109.    J.W. also appointed Plaintiff to serve as his agent, pursuant to an executed Power of Attorney, in order to, on J.W.'s behalf, submit insurance claims for reimbursement payments, exercise appeals of claims, and file suit against his health insurance carrier for claims relating to reimbursement payments for medical services rendered to J.W. by Plaintiff.

110.    Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $78,000.00.

111.    Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $6,646.83.

112.    Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

113.    Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #8: S.B., Date of Service: 1/5/16*

114.    On January 5, 2016, Plaintiff rendered surgical services to Oxford Insured S.B. at St. Barnabas Health Ambulatory Surgery Center.

115.    S.B. was diagnosed with a left distal biceps brachii tear, and Plaintiff performed an open left distal biceps brachii repair.

116.    S.B. was insured under the Oxford Plan through his own business.

117.    S.B. assigned his insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

118.    S.B. also appointed Plaintiff to serve as his agent, pursuant to an executed Power of Attorney, in order to, on S.B.'s behalf, submit insurance claims for reimbursement payments, exercise appeals of claims, and file suit against his health insurance carrier for claims relating to

reimbursement payments for medical services rendered to S.B. by Plaintiff.

119.    Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $30,000.00.

120.    Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $1,324.00.

121.    Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

122.    Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #9: B.F., Date of Service: 3/18/16*

123.    On March 18, 2016, Plaintiff rendered surgical services to Oxford Insured B.F. at St. Barnabas Medical Center.

124.    B.F. was diagnosed with a left knee chondral injury of the femoral trochlea, and Plaintiff performed a left knee arthroscopy and debridement of hypertrophied anterior fat pad.

125.    B.F. was insured under the Oxford Plan through her employer, American Foundation for Suicide Prevention.

126.    B.F. assigned her insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

127.    B.F. also appointed Plaintiff to serve as her agent, pursuant to an executed Power of Attorney, in order to, on B.F.'s behalf, submit insurance claims for reimbursement payments, exercise appeals of claims, and file suit against her health insurance carrier for claims relating to reimbursement payments for medical services rendered to B.F. by Plaintiff.

128.    Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford

Insured in the amount of $51,000.00.

129.    Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $576.90.

130.    Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

131.    Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #10: H.S., Date of Service: 5/16/16*

132.    On May 16, 2016, Plaintiff rendered surgical services to Oxford Insured H.S. at Patient Care Associates, LLC.

133.    H.S. was diagnosed with a right knee medial meniscus tear, and Plaintiff performed a right knee arthroscopic partial medial meniscectomy, chondroplasty of the medial femoral condyle and chondroplasty of the patellofemoral compartment.

134.    H.S. was insured under the Oxford Plan.

135.    H.S. assigned his insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

136.    H.S. also appointed Plaintiff to serve as his agent, pursuant to an executed Power of Attorney, in order to, on H.S.'s behalf, submit insurance claims for reimbursement payments, exercise appeals of claims, and file suit against his health insurance carrier for claims relating to reimbursement payments for medical services rendered to H.S. by Plaintiff.

137.    Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $129,000.00.

138.    Oxford drastically underpaid the claim for the surgical services, allowing

-20-

reimbursement in the amount of $712.23.

139.    Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

140.    Oxford rejected the appeal and improperly upheld the underpayment.

*Oxford Insured #11: R.R., Date of Service: 9/15/16*

141.    On September 15, 2016, Plaintiff rendered surgical services to Oxford Insured R.R. at Clara Maas Medical Center.

142.    R.R. was diagnosed with a right Grade 2 open tibia fracture, and Plaintiff performed follow up surgery to previous emergency surgery on September 11, 2016.  Specifically, Plaintiff performed treatment of the tibial shaft fracture by intramedullary implant, internal fixation, removal of external fixation system and debridement and removal foreign bodies.

143.    R.R. was insured under the Oxford Plan through his employer, Philipe's Precision

144.    R.R. assigned his insurance benefits to Plaintiff, including the right to submit insurance claims, receive claim reimbursement checks directly from the insurance plan, and pursue administrative and judicial appeal of claims.

145.    R.R. also appointed Plaintiff to serve as his agent, pursuant to an executed Power of Attorney, in order to, on R.R.'s behalf, submit insurance claims for reimbursement payments, exercise appeals of claims, and file suit against his health insurance carrier for claims relating to reimbursement payments for medical services rendered to R.R. by Plaintiff.

146.    Plaintiff submitted a claim to Oxford for surgical services provided to the Oxford Insured in the amount of $211,302.00.

147.    Oxford drastically underpaid the claim for the surgical services, allowing reimbursement in the amount of $2,401.31.

BE:11668529.1/GOT052-279811

148.     Plaintiff appealed the underpaid claim to Oxford pursuant to the Oxford Insured's insurance plan.

149.     Oxford rejected the appeal and improperly upheld the underpayment.

**D.     Oxford's Failure to Provide Plan Documentation**

150.     As an administrator of the Oxford Plans, Oxford is obligated under ERISA to provide controlling plan documentation upon request of plan participants, beneficiaries, and their assignees.   Specifically, ERISA provides that:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, **or other instruments under which the plan is established or operated**.

29 U.S.C. § 1024(b)(4) (emphasis added).

151.     Further, ERISA regulations governing full and fair review of adverse benefit determinations require that "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 2560.503-1(h)(2)(iii).

152.     ERISA imposes upon an administrator a monetary penalty of up to $110 per day for each instance of non-compliance with a request for plan information, which is payable to Plaintiff as beneficiaries.  29 U.S.C. § 1132(c)(1); 29 C.F.R. 2575.502c-1.

153.     On July 10, 2020, Plaintiff – in its role as a beneficiary or assignee of the Oxford Insureds – requested that Oxford provide (1) applicable insurance policy language which justifies claim reductions on Oxford part; (2) Plan claims procedures; and (3) documentation of the methods upon which Oxford's payment allowances were made. To date, Plaintiffs have not received the requested documentation from Oxford.

154.     As a result of its failure to provide Plaintiffs with the requested documentation,

BE:11668529.1/GOT052-279811

Oxford is in violation of ERISA.

**E.**     **Plaintiff's Exhaustion of Administrative Remedies**

155.    ERISA, at 29 U.S.C. § 1133, mandates that a claimant (such as Plaintiff) that appeals the denial of claims must be given a "reasonable opportunity …for a full and fair review" of the decision denying the claim.  In addition, the regulations at 29 C.F.R. §2560. 503-1 set forth certain requirements of the claim appeal process that are necessary to achieve a full and fair review. The requirements include, without limitation, sufficient time for the claimant to submit an appeal; deadlines for responding to claim appeals; the necessity of having different individuals involved in the claim appeal than the ones who rendered the initial decision; mandatory disclosure of all documentation relevant to the claim decision; specific information that must be included in the claim determination and appeal determination letters; and, where the adverse determination was based in whole or in part on a medical judgment including a determination whether an item was medically necessary or appropriate, the requirement that the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

156.    Plaintiff properly appealed the Claims, exhausting its administrative remedies, to the extent required.  Plaintiff submitted at least the required number of appeals for each of the Claims at issue, providing medical documentation to Oxford supporting the need for the treatment at issue.

157.    Moreover, where a claims procedure falls short of the minimum standards required under ERISA and its regulations, the claimant is deemed to have exhausted administrative remedies under the plan and is entitled to pursue any available remedies under ERISA Section 502(a), 29 U.S.C. § 1132(a), or under State law, as applicable.  29 C.F.R. § 2560.503-1; 29 C.F.R. § 2590.715-2719.  That is the case here.

158.    Plaintiff has exhausted administrative remedies with respect to the Claims at issue, either through actual completion of the internal Oxford appeals process and/or by virtue of Oxford's failure to achieve minimal standards required under ERISA and its regulations.

159.    Specifically, without limitation, Oxford issued blanket denials that the services rendered were not compensable and not covered under the Insured's plan, which were inaccurate, and despite the submission of treatment records demonstrating the need for the services.  Oxford maintained these denials without a substantive or full and fair review of Plaintiff's appeals.

160.    Oxford's repeated and blanket denials of appeals for perfunctory and inaccurate reasons demonstrates that the purported appeals mechanism is a sham and a pretext for attempting to suggest that a legitimate appeals process exists, when it does not.

161.    As described above, any appeals required to be exhausted by Plaintiff must be deemed exhausted by reason of futility, and/or due to Oxford's denial of meaningful access to administrative remedies under the Oxford Plans at issue in this action.

**F.**    **Oxford's Breach of Duty to Insureds**

162.    Oxford's conduct also constitutes a violation of its obligations to the Oxford Insured and to Plaintiff, by assignment.  Specifically, the Oxford Insured and/or his employer typically pay a higher premium to enable the Oxford Insured to receive the benefit of out-of-network coverage.  Oxford's conduct in improperly denying payment on Claims and improperly processing appeals effectively denied the Oxford Insured the out-of-network benefits to which he is entitled.

163.    No valid or debatable reason exists for Oxford's conduct with respect to the Claims in issue.  In each instance, Oxford failed to individually evaluate Plaintiff's Claims through any legitimate means and indiscriminately denied reimbursement for services rendered.

164.    Oxford's unsubstantiated and bad faith denials of Plaintiff's Claims also violate the

common law, further entitling Plaintiff to relief as detailed below.

**G.**     **Plaintiff Has Suffered Substantial Damages**

165.     As a result of Oxford's systematic failure to appropriately process and pay out-of-network claims in compliance with ERISA requirements and/or the terms of the Oxford Plan, and its improper and unlawful processing of appeals, Plaintiff has incurred very substantial damages, and exclusive of interest, costs, and attorneys' fees.

**H.**     **Plaintiff Has Standing to Bring the Claims**

166.     As described above, Plaintiff is the assignee of the rights and benefits held by the Oxford Insured in health care plans administered by Oxford.  Oxford Insureds who receive treatment from Plaintiff assign all of their rights and benefits with respect to such services to Plaintiff.  Such assignments confer on Plaintiff the right to maintain legal actions on the insured's behalf.

167.     Oxford has acknowledged that Plaintiff has the right to file claims for benefits pursuant to such assignments, by submitting payment for out-of-network services directly to Plaintiff for certain claims assigned to Plaintiff by the Oxford Insured, and due to the interaction and communication between Oxford and Plaintiff with respect to processing of the underlying Claims.

168.     Accordingly, Oxford has waived and/or is estopped from asserting any rights to enforce anti-assignment provisions, if any, in the plans.

169.     In addition, Plaintiff has standing to bring this action as a "beneficiary" under ERISA, 29 U.S.C. § 1132(a).  ERISA defines "beneficiary" as a "person designated by a participant . . . who is or may become entitled to a benefit" under an ERISA regulated plan. ERISA, 29 U.S.C. § 1002(8).

170.     When the Oxford Insured assigned his rights and benefits to Plaintiff in connection

with the services rendered to them by Plaintiff, those Oxford Insureds assigned all of their rights and benefits, including (1) the right to file a claim and receive payment, and (2) the legal right to file suit to obtain full payment.

## COUNT I

## CLAIM FOR BENEFITS DUE UNDER ERISA § 502(a)(1)(B)

171. Plaintiff repeats and re-alleges each of the preceding allegations as if fully set forth herein in their entirety.

172. Count I is brought under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3).

173. Plaintiff received valid assignments of all rights and benefits held by the Oxford Insured pursuant to ERISA plans administered by Oxford as set forth herein.  Such assignments include all of the Oxford Insured's rights and benefits with respect to out-of-network treatments provided by Plaintiff.

174. The execution of such assignments confers upon Plaintiff beneficiary status under ERISA § 502(a).

175. Through its course of dealings with Plaintiff as set forth above, Oxford waived any right to enforce any anti-assignment provisions which may exist in the Oxford Plan at issue.

176. As a beneficiary under ERISA § 502(a), Plaintiff is entitled to recover benefits due to the Oxford Insured pursuant to the terms of the Oxford Plans that govern the obligations of Oxford to the Oxford Insured.

177. Oxford functioned at all relevant times as the "plan administrator" for the Oxford Plans within the meaning of that term under ERISA for the Oxford Plans and continues to function in that capacity.  Oxford functions as a "plan administrator" when it insures or administers a group health plan, when it is designated as a plan administrator for such a plan, or when it determines appeals and addresses grievances within the meaning of such terms under ERISA.

178.    Oxford exercises discretionary authority and control in its administration of the Oxford Plans, and through interactions with Oxford Insureds and Plaintiff in the manner described herein.  Therefore, Oxford also functions as a "fiduciary" within the meaning of that term under ERISA.

179.    Oxford violated its legal obligations as a plan administrator and/or fiduciary under ERISA and federal common law each time it failed to make payment, made only partial payment, or delayed payment of benefits, without complying with ERISA requirements governing the claims process and adverse benefit determinations.

180.    Oxford violated its legal obligations under ERISA and federal common law each time it failed to make payment, made only partial payment, or delayed payment of benefits, without complying with the terms of the Oxford Plans that govern the obligations owed by Oxford to the Oxford Insured and to Plaintiff as his assignee.

181.    Oxford's lack of disclosure to the Oxford Insured and to Plaintiff relating to adverse benefit determinations, as required under ERISA, violated its legal obligations.

182.    Plaintiff properly appealed the Claims at issue to the extent any such appeals were required.  The appeals were improperly denied.

183.    Moreover, all appeals should be deemed exhausted or excused by virtue of Oxford's numerous procedural and substantive violations described herein, which deprived Plaintiff of meaningful access to administrative remedies.

184.    As a result of the foregoing, Plaintiff seeks payment of unpaid benefits on the Claims and interest from Oxford back to the dates when the Claims were originally submitted to Oxford.  Further, Oxford should be forbidden to engage in the wrongful conduct with respect to processing of the Oxford Insured's Claims described herein.

BE:11668529.1/GOT052-279811

185.   Additionally, Oxford should be ordered to disgorge the profits or fees it has earned by denying and/or delaying payment of Plaintiff's Claims through conduct in violation of ERISA.

186.   Plaintiff further requests attorneys' fees, costs, prejudgment interest and other appropriate relief against Oxford.

**COUNT II**

**VIOLATION OF FIDUCIARY DUTIES OF LOYALTY AND CARE**

187.   Plaintiff repeats and re-alleges each of the preceding allegations as if fully set forth herein in their entirety.

188.   Count II is brought under 29 U.S.C. § 1132(a)(2), 29 U.S.C. § 1104, and 29 U.S.C. § 1109.

189.   Plaintiff received a valid assignment of all rights and benefits held by the Oxford Insured pursuant to ERISA plans administered by Oxford as set forth herein.  Such assignments confer on Plaintiff all of the Oxford Insured's rights and benefits with respect to out-of-network treatments provided by Plaintiff.

190.   The execution of such assignments confers upon Plaintiff the status of beneficiary under ERISA § 502(a).

191.   Oxford acted as a fiduciary to the beneficiaries – including the Oxford Insured and Plaintiff – of the plans it administered, including the plans of Oxford Insureds that received treatment from Plaintiff.

192.   Specifically, with respect to such Plans, Oxford acted as a fiduciary to beneficiaries (including Plaintiff) because Oxford exercised discretion in determining the amounts of Plan benefits that would be paid to Plan beneficiaries.  The exercise of discretion with regard to determination of plan benefits is an inherently fiduciary function and confers the imposition of the duties of loyalty and care.

-28-

193.     The Oxford Insured, and Plaintiff by way of assignment of the rights of the Oxford Insured, may sue in a representative capacity on behalf of the individual Oxford Plan at issue in this Complaint for relief with respect to breaches of fiduciary duties by Oxford.

194.     As a fiduciary of plans governed by ERISA, Oxford owes the beneficiaries of such plans (including Plaintiff) a duty of care, defined as an obligation to act prudently, with the care, skill, prudence, and diligence that a prudent administrator would use in the conduct of an enterprise of like character.

195.     Additionally, as set forth in § 404(a)(1)(B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(B) and (D), ERISA fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan.

196.     Oxford violated the fiduciary duty of care it owed to Plaintiff as beneficiary of the Oxford Plan by its conduct set forth above, such as, making adverse benefit determinations with regard to payment or denial of Plan benefits to Plaintiff contrary to and based upon reasons outside of the Oxford Plans, ERISA, and regulations promulgated thereunder, including, upon information and belief, Oxford's own financial interest.

197.     As a fiduciary of plans governed by ERISA, Oxford owes the beneficiary of such plans (including Plaintiff) a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of the beneficiaries.  For example, Oxford is prohibited from making benefits determinations for the purpose of enhancing its own profitability at the expense of its beneficiaries.  § 406 of ERISA, 29 U.S.C. § 1106.

198.     Oxford violated the fiduciary duty of loyalty it owed to Plaintiff as beneficiary of Oxford Plans by its conduct set forth above, such as making adverse benefit determinations with

BE:11668529.1/GOT052-279811

regard to payment or denial of Plan benefits to Plaintiff contrary to and based upon reasons outside of those permitted by the Oxford Plans, ERISA, and regulations promulgated thereunder, including, upon information and belief, Oxford's own financial interest.

199.    Plaintiff has exhausted administrative remedies with respect to the Claims at issue through completion of the Oxford internal appeals process, to the extent necessary.

200.    Moreover, all appeals should be deemed exhausted by virtue of Oxford's numerous procedural and substantive violations described herein, which deprived Plaintiff of meaningful access to administrative remedies.

201.    Further, the routine failed appeals, Oxford's procedural flaws in deciding appeals, and lack of meaningful analysis in deciding the appeals, show the futility of exhausting appeals to Oxford.  Exhaustion of appeals under ERISA should, therefore, be deemed to be futile.

202.    As a result of the foregoing, Plaintiff is entitled to restitution and injunctive and declaratory relief pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1132(a)(3), based upon Oxford's violation of its fiduciary duties.  Additionally, Oxford should be ordered to disgorge the profits or fees it has earned by denying and/or delaying payment of Plaintiff's Claims through conduct which violated its fiduciary duties under ERISA.

203.    Further, Plaintiff is entitled to be made whole in the form of monetary compensation for the losses it incurred, and which continue to result from Oxford's breaches of its fiduciary duties owed to Plaintiff, including interest back to the dates that the claims were originally submitted to Oxford.

## COUNT III

## PENALTIES FOR FAILURE TO PROVIDE PLAN DOCUMENTS

204.    Plaintiff repeats and re-alleges each of the preceding allegations as if fully set forth

herein.

205.     Count III is brought under 29 U.S.C. § 1132(a)(1)(A) and 29 U.S.C. § 1132(c)(1).

206.     As an administrator of the Oxford Plans, Oxford is obligated under ERISA to provide controlling plan documentation upon request of plan participants, beneficiaries, and their assignees.   Specifically, ERISA provides that:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, **or other instruments under which the plan is established or operated**.

29 U.S.C. § 1024(b)(4) (emphasis added)

207.     Further, ERISA regulations governing full and fair review of adverse benefit determinations require that "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 2560.503-1(h)(2)(iii).

208.     ERISA imposes upon an administrator a monetary penalty of up to $110 per day for each instance of non-compliance with a request for plan information, which is payable to Plaintiff as beneficiary.  29 U.S.C. § 1132(c)(1); 29 C.F.R. §2575.502c-1.

209.     On July 10, 2020, Plaintiff requested that Oxford provide as to each Claim: (1) the plan document; (2) the Summary Plan Description; (3) the Evidence of Coverage; (4) any amendments to the above; (5) any agreements or instruments under which the plan is established or operated; and (6) other relevant documentation.  To date, Plaintiff has not received the requested documentation from Defendants.

210.     As a result of its failure to provide Plaintiff with the requested documentation, Horizon is in violation of ERISA.

## COUNT IV

## ATTORNEYS' FEES AND COSTS UNDER ERISA

211.     Plaintiff repeats and re-alleges each of the preceding allegations as if fully set forth herein in their entirety.

212.     29 U.S.C. § 1132(g)(1) authorizes an award of reasonable attorneys' fees and costs of an ERISA action.

213.     As a result of the above-described conduct by Oxford, Plaintiff was required to retain the services of counsel and necessarily incurred legal fees and costs in prosecuting this action.

214.     Plaintiff anticipates incurring additional legal fees and costs in association with this action.

215.     Plaintiff therefore requests an award of reasonable attorneys' fees and costs against Oxford in an amount that will be calculated at the conclusion of this action.

## COUNT V

## BREACH OF CONTRACT

216.     Plaintiff repeats and re-alleges each of the preceding allegations as if fully set forth herein in their entirety.

217.     To the extent that Claims relating to benefits or payments owed by Oxford are not associated with an ERISA-governed Oxford Plan and/or are not preempted by ERISA, Plaintiff is entitled, as the assignee of rights and benefits held by Oxford Insureds under their insurance contracts or plans with Oxford, to maintain a claim for breach of contract pursuant to New Jersey law.

218.     Through its course of dealings with Plaintiff as set forth above, Oxford waived and/or is estopped from asserting any right to enforce any anti-assignment provisions which may

-32-

exist in the Oxford Plans at issue.

219.    The Oxford Insured and/or his employer entered into insurance contracts with Oxford to procure coverage through Oxford's Plans and assigned the rights and benefits under those contracts to Plaintiff.

220.    Oxford received good and valuable consideration from the Insured and/or his employer in exchange for providing certain insurance benefits under the Oxford Plans, including the out-of-network benefits.

221.    In violation of those agreements, Oxford failed to pay Plaintiff (as the assignee of such benefits and/or third-party beneficiary of the Oxford Insured's contractual rights) all benefits owed to the Oxford Insured.

222.    Plaintiff provided medically necessary and appropriate treatment to the Oxford Insured and submitted appropriate bills directly to Oxford for said services in accordance with the terms of the Oxford Plans and New Jersey law.

223.    Plaintiff has complied with all terms of Oxford Insured's Plans, the benefits of which have been lawfully assigned to Plaintiff, including the right to assert legal claims to enforce rights thereunder.

224.    As a proximate result of Oxford's material breaches of contract and non-payment for services duly rendered, Plaintiff has suffered damages.

## COUNT VI

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

225.    Plaintiff repeats and re-alleges each of the preceding allegations as if fully set forth herein in their entirety.

226.    To the extent that the Claims relating to benefits or payments owed by Oxford are not associated with an ERISA-governed Oxford Plan and/or are not preempted by ERISA, Plaintiff

is entitled, as the assignee of rights and benefits held by the Oxford Insured, to maintain a claim for breach of the implied covenant of good faith and fair dealing pursuant to New Jersey law.

227.    Through its course of dealings with Plaintiff as set forth above, Oxford waived and/or is estopped from asserting any right to enforce any anti-assignment provisions which may exist in the Oxford Plans at issue.

228.    A covenant of good faith and fair dealing is implied in all contracts between Oxford and its Insureds under New Jersey law.

229.    Oxford had no legitimate, good faith basis for engaging in improper conduct set forth above in connection with its contracts with the insured.  Oxford's conduct breached the covenant of good faith and fair dealing owing to its insureds, and to Plaintiff as their assignee and beneficiary.  Plaintiff has standing to assert claims for breach of the covenant of good faith and fair dealing in its capacity as assignee of the Oxford Insured's rights under the contracts and/or as third-party beneficiary.

230.    Oxford breached the implied duty of good faith and fair dealing under the contract with the Oxford Insured, and deprived Plaintiff of the benefits of the Oxford Plans here at issue, including payment for services duly rendered.

231.    As a proximate result of Oxford's material breach of the implied covenant and duty of good faith and fair dealing, Plaintiff has suffered damages.

## COUNT VII

## PROMISSORY ESTOPPEL

232.    Plaintiff repeats and re-alleges each of the preceding allegations as if fully set forth herein in their entirety.

233.    To the extent that the Claims relating to benefits or payments owed by Oxford are not associated with an ERISA-governed Oxford Plan and/or are not preempted by ERISA, Plaintiff

BE:11668529.1/GOT052-279811

are entitled, as the assignee of rights and benefits held by the Oxford Insured under their insurance contracts or plans with Oxford, to maintain a promissory estoppel claim against Oxford under New Jersey law.

234.   Through its course of dealings with Plaintiff as set forth above, Oxford waived and/or is estopped from asserting any right to enforce any anti-assignment provisions which may exist in the Oxford Plans at issue.

235.   Plaintiff, to its detriment, reasonably relied upon Oxford's numerous assurances and promises that it would process claims and issue benefits in accordance with the terms of the Oxford Plans through which the Oxford Insureds receive benefits.

236.   Through their course of dealings, and under New Jersey law, Plaintiff expected Oxford to process claims and issue benefits in accordance with the terms of the Oxford Plans through which the Oxford Insured received benefits.

237.   Plaintiff has suffered damages as a direct and proximate result of its reasonable reliance upon Oxford's numerous assurances and promises that it would process claims and issue benefits and make payment to Plaintiff as assignee of the Oxford Insured, in accordance with the terms of Oxford Plans through which the Oxford Insured receive benefits, and Oxford's failure to fulfill such assurances and promises.

## COUNT VIII

## UNJUST ENRICHMENT

238.   Plaintiff repeats and re-alleges each of the preceding allegations as if fully set forth herein in their entirety.

239.   To the extent that the Claims relating to benefits or payments owed by Oxford are not associated with an ERISA-governed Oxford Plan and/or are not deemed preempted by ERISA, Plaintiff is entitled, as the assignee of rights and benefits held by the Oxford Insured, to maintain

an unjust enrichment claim against Oxford under New Jersey law, for payment owing for services rendered to the Oxford Insured.

240.    Through its course of dealings with Plaintiff as set forth above, Oxford waived and/or is estopped from asserting any right to enforce any anti-assignment provisions which may exist in the Oxford Plans at issue.

241.    By and through its failure to process claims and issue benefits for services rendered by Plaintiff in accordance with the Oxford Plans through which the Oxford Insured received benefits, Oxford has retained moneys to which it is not entitled and to which Plaintiff is entitled for services rendered to the Oxford Insured.

242.    Plaintiff has suffered damages as a direct and proximate result of Oxford's actions.

## COUNT IX

## QUANTUM MERUIT

243.    Plaintiff repeats and re-alleges each of the preceding allegations as if fully set forth herein in their entirety.

244.    Plaintiff provided services and other things of value to Oxford and Oxford Insured.

245.    Oxford has not paid for such services and things of value.

246.    Plaintiff, therefore, is entitled to payment from Oxford for the reasonable value of the services rendered in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment in its favor against Oxford as follows:

(A)    Declaring that Oxford has breached the terms of its Plans with regard to the out-of-network benefits in the Plans, and awarding compensatory damages to Plaintiff for unpaid benefits, as well as awarding declaratory relief with respect to Oxford's violations of ERISA, including a declaration that Oxford's claim processing methodology with respect to claims assigned to Plaintiff violates ERISA;

(B)    Declaring that Oxford has breached its fiduciary obligations owed to Plaintiff under ERISA and awarding compensatory damages resulting therefrom;

BE:11668529.1/GOT052-279811

(C)     Declaring that Oxford has failed to provide "full and fair review" of claims denials or reductions to Plaintiff as required under ERISA and its implementing regulations, and awarding compensatory damages and declaratory relief with respect to Oxford's violations of ERISA;

(D)     Awarding Plaintiff pre-judgment interest back to the dates its claims were originally submitted to Oxford;

(E)     Declaring that Oxford has violated federal claims procedures under ERISA and that "deemed exhaustion" under the ERISA regulations is in effect as a result of Oxford's actions;

(F)     Enjoining Oxford from continuing to commit any violation of law;

(G)     Ordering Oxford to disgorge the profits or fees it has earned by denying and/or delaying payment of Plaintiff's Claims through conduct in violation of ERISA;

(H)     Awarding Plaintiff compensatory damages on all claims in an amount to be proven at trial;

(I)     Awarding Plaintiff prejudgment interest on all claims;

(J)     Awarding Plaintiff punitive and exemplary damages against Oxford in an amount to be proven at trial;

(K)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, expenses, and other costs permitted by law, including but not limited to 29 U.S.C. § 1132(g)(1), to be paid by Oxford in amounts to be determined by the Court; and

(L)     Granting such other relief against all Defendants as the Court deems just and proper.

**BRACH EICHLER L.L.C.**

By:  /s/ Keith J. Roberts
Keith J. Roberts
Email: kroberts@bracheichler.com
101 Eisenhower Parkway
Roseland, NJ  07068
Telephone: 973.228.5700
*Attorneys for Plaintiff*

Dated: April 15, 2021

BE:11668529.1/GOT052-279811

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff demands a jury trial on all Counts so triable.

**BRACH EICHLER L.L.C.**

By:  /s/ Keith J. Roberts
Keith J. Roberts
Email: kroberts@bracheichler.com
101 Eisenhower Parkway
Roseland, NJ  07068
Telephone: 973.228.5700
*Attorneys for Plaintiff*

Dated: April 15, 2021

BE:11668529.1/GOT052-279811

<u>**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**</u>

I hereby certify that the matter in controversy is not the subject of any other action pending

in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.

**BRACH EICHLER L.L.C.**

By:   /s/ Keith J. Roberts
Keith J. Roberts
Email: kroberts@bracheichler.com
101 Eisenhower Parkway
Roseland, NJ  07068
Telephone: 973.228.5700
*Attorneys for Plaintiff*

Dated:  April 15, 2021

BE:11668529.1/GOT052-279811